IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| ADRIANA MENDEZ, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:20-cv-3422-AT |
| WAL-MART STORES, INC. | : | |
| AND WAL-MART STORES EAST, LP, | : | |
| Defendants. | : | |

## **ORDER**

This is an action by Plaintiff Adriana Mendez seeking damages for injuries sustained after she slipped and fell in a local Wal-Mart operated by Defendants Walmart Inc.[1] and Wal-Mart Stores East, LP. This matter is before the Court on Defendants' Motion for Summary Judgment [Doc. 116], the Parties' Requests for Oral Argument on Defendants' Motion for Summary Judgment [Docs. 117, 124], Plaintiff's Motion for Leave to File an Amended Complaint to clarify her request for attorneys' fees [Doc. 135], and Plaintiff's Request for Oral Argument on her Motion for Leave to File an Amended Complaint [140].

---

[1] Walmart Inc. is the current name of Wal-Mart Stores, Inc. (*See* Defendants' Notice of Removal, Doc. 1.)

For the following reasons, Defendants' Motion for Summary Judgment [Doc. 116] is **GRANTED**, and the Parties' Requests for Oral Argument on the same [Docs. 117, 124] are **DENIED**, as the Court determined that oral argument was unnecessary and because the requests are now moot. Further, because the Court has granted Defendants' Motion for Summary Judgment, Plaintiff's Motion for Leave to File an Amended Complaint [Doc. 135] to clarify her request for attorneys' fees and Request for Oral Argument on the same [140] are **DENIED as moot**.

## I.   Background[2]

### A.   The Incident

On September 15, 2018, Plaintiff shopped with her two grandchildren in a Lawrenceville, Georgia Wal-Mart Fresh Market Store (the "Store") operated by Defendants. (Defendants' Statement of Material Facts ("DSOF"), Doc. 116-8 ¶ 1; Pl. Resp. to DSOF, Doc. 123 ¶ 1.) Plaintiff entered the Store, shopped for a while, checked out at a register near the customer service desk, and then returned to her vehicle. (*Id.* ¶ 2.) After reaching her vehicle, Plaintiff realized that she had been charged twice for "kitchen paper" and returned to the Store to dispute the purchase with customer service. (*See id.* ¶ 3.)

---

[2] Keeping in mind that, when deciding a motion for summary judgment, the Court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the Court provides the following statement of facts. *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (observing that, in connection with summary judgment, the court must review all facts and inferences in the light most favorable to the non-moving party). This statement does not represent actual findings of fact. *Priester v. City of Riviera Beach*, 208 F.3d 919, 925 n.3 (11th Cir. 2000) ("We . . . have repeatedly stressed that the 'facts,' as accepted at the summary judgment stage of the proceedings, may not be the 'actual' facts of the case."). Instead, the Court has provided the statement simply to place the Court's legal analysis in the context of this particular matter.

At 7:51:12 PM, Plaintiff reentered the Store with her two grandchildren.



Plaintiff Reentering the Store with Grandchildren

(*See* Defendants' Video 7 Attached as Exhibit A to MSJ, Doc. 118.) She then passed by the register at which she had previously checked out, walked through the "incident area" in front of the customer service desk where she would later slip, and made her way to the customer service desk to request assistance.



Plaintiff Walking to Customer Service Desk

(*See* Defendants' Video 8 Attached as Exhibit A to MSJ, Doc. 118 at 7:51:36 PM;
DSOF, Doc. 116-8 ¶ 4; Pl. Resp. to DSOF, Doc. 123 ¶ 4.)

Defendants' Customer Service Associate Davanta Douglas was working at
the front of the Store near the customer service desk the evening of September 15,
2018. (DSOF, Doc. 116-8 ¶ 19; Pl. Resp. to DSOF, Doc. 123 ¶ 19.) At 7:52:04 PM,
Mr. Douglas walked directly through the incident area and conducted an
inspection.[3]


Mr. Douglas Conducting First Inspection



(*Id.* ¶ 20; *see* Defendants' Video 8 Attached as Exhibit A to MSJ, Doc. 118 at 7:52:04
PM.)

In a deposition, Mr. Douglas testified that he saw no hazardous condition,
liquid, or other substance on the floor during his inspection. (DSOF, Doc. 116-8

---

[3] Although Mr. Douglas testified that he conducted this inspection, there are no written records
memorializing the inspection. (Plaintiff's Statement of Material Facts ("PSOF"), Doc. 122 ¶ 21;
Def. Resp. to PSOF, Doc. 131 ¶ 21.)

¶ 20; Pl. Resp. to DSOF, Doc. 123 ¶ 20; Douglas Declaration, Doc. 116-6 ¶ 4.) Further, Mr. Douglas testified that he would have immediately cleaned up or removed any potential hazards on the floor, including any foreign liquids. (Douglas Declaration, Doc. 116-6 ¶ 3.) Plaintiff disputes whether Mr. Douglas conducted a "reasonable inspection" of the floor and whether he observed safety policies and procedures for looking for and removing spills, foreign objects, and other safety hazards. (DSOF, Doc. 116-8 ¶ 20; Pl. Resp. to DSOF, Doc. 123 ¶ 20.)

After requesting assistance, at approximately 7:57:36 PM, Plaintiff walked a few steps away from the customer service desk to a machine to purchase a scratch off lottery ticket and waited for assistance.



Plaintiff at Lottery Machine

(*See* Defendants' Video 8 Attached as Exhibit A to MSJ, Doc. 118 at 7:57:36 PM to 8:00:16 PM; DSOF, Doc. 116-8 ¶ 5; Pl. Resp. to DSOF, Doc. 123 ¶ 5.)[4]

Less than a minute later, at approximately 7:58:08 PM, Defendants' Maintenance Associate Andres Valdez, who walks with a significant limp, entered the Store transporting a shopping cart or buggy filled with plastic bags of trash.



Mr. Valdez Entering the Store with a Buggy Filled with Bags of Trash

(*See* Defendants' Video 2 Attached as Exhibit A to MSJ, Doc. 118.)

---

[4] Plaintiff states in her deposition that she specifically waited for the assistance of a supervisor. (Mendez Depo., Doc. 129-3 at 146:1-2.)

The buggy that Mr. Valdez used violated Defendants' established trash collection policies, which had been effective since November 30, 2015, and required Mr. Valdez to use a solid, rolling bin without holes to collect trash, chiefly because individuals put their groceries in the shopping carts, and Defendants find it unsanitary to collect trash in those same carts. (Wal-Mart Store Manager Aster Siyoum Depo. ("Siyoum Depo."), Doc. 127-1 at 19:25-20:9, 22:14-23:22; Wal-Mart Store Manager Rosa Beard Depo. ("Beard Depo."), Doc. 127-2 at 22:7-23:20; Defendants' Trash Collection Policy, Doc 120-8.) In a deposition, Mr. Valdez admitted that he had previously been told not to use a buggy to collect trash. (Valdez Depo., Doc. 129-1 at ECF 45:3-5.)

While walking through the Store, Mr. Valdez slipped at 7:58:26 PM.



Mr. Valdez Slipping While Pushing the Buggy Filled with Bags of Trash

(*See* Defendants' Video 8 Attached as Exhibit A to MSJ, Doc. 118 at 7:58:26 PM.)

In a deposition, Mr. Valdez testified that he did not recall why he slipped but explained that he routinely fell while working because of his physical disability and the strain of working in his role. (Valdez Depo., Doc. 129-1 at ECF 53:3-17,[5] 103:17-104:2.) Plaintiff posits that Mr. Valdez slipped on a substance leaking from the trash bags because (1) Mr. Valdez slipped behind the buggy's path and (2) Defendants' employees can be seen on video cleaning the relevant area approximately twenty-five minutes later. (*See* DSOF, Doc. 116-8 ¶ 30; Pl. Resp. to DSOF, Doc. 123 ¶ 30; Defendants' Video 8 Attached as Exhibit A to MSJ, Doc. 118 at 7:58:26 PM, 8:24:10 PM to 8:25:00 PM.)[6] Notably, several individuals walked through that exact area where Mr. Valdez fell during the twenty-five-minute

---

[5]   Q: And what is your physical disability?
A: I have nerve damage in the left leg and short-term memory and just there's a lot -- there's more stuff to it.
. . .
Q: Did you ever slip or fall at work?
A: Yes.
Q: Okay. How many times?
A: Lots of times.
Q: And why?
A: Because I was physically disabled and overworked.

[6]



period. (*See generally* Defendants' Video 8 Attached as Exhibit A to MSJ, Doc. 118 at 7:58:26 to 8:25:00 PM.)[7]

At approximately 7:58:47 PM, Mr. Valdez parked the buggy that he pushed in the area where Plaintiff would later slip, i.e., the incident area.



(Defendants' Video 8 Attached as Exhibit A to MSJ, Doc. 118.)

  

[7]

Then, less than a minute later at 7:59:14 PM, Customer Service Associate Douglas looked directly at and conducted a visual inspection of the incident area.



(*See* Defendants' Video 8 Attached as Exhibit A to MSJ, Doc. 118 at 7:59:16 PM to 7:59:20 PM.) As shown in the screenshot above, Mr. Valdez was still in the area, and the buggy in which he was collecting trash covered a portion of the floor. (*Id.*) As Mr. Douglas conducted his inspection, he did not see any hazardous condition, liquid, or other substance on the floor and testified that he would have cleaned up said substance if it had been there and he had seen it. (Douglas Declaration, Doc. 116-6 ¶¶ 3, 5.)

Plaintiff again disputes whether Mr. Douglas conducted a "reasonable inspection" of the floor and whether he observed safety policies and procedures for

looking for and removing spills, foreign objects, and other safety hazards. (DSOF, Doc. 116-8 ¶ 21; Pl. Resp. to DSOF, Doc. 123 ¶ 21.) Plaintiff argues that Mr. Douglas walked directly towards the trash filled buggy and then passed it without confronting Mr. Valdez and without looking at the floor surrounding the trash filled buggy. (*Id.*) At 7:59:28 PM, Mr. Valdez leaves the incident area. (*See* Defendants' Video 8 Attached as Exhibit A to MSJ, Doc. 118 at 7:59:28 PM to 7:59:35 PM.)

At approximately 8:00:06 PM, Mr. Douglas came from behind the service desk to close the customer service area and move the lane dividers for closing.



(*Id.* ¶ 22; *see* Defendants' Video 8 Attached as Exhibit A to MSJ, Doc. 118 at 8:00:05 PM to 8:00:15 PM)

At 8:00:16 PM, Plaintiff left the machine at which she had been standing and walked toward the customer service desk where she then slipped at 8:00:19 PM.[8]



(*See* Defendants' Video 8 Attached as Exhibit A to MSJ, Doc. 118.)

---

[8] Defendants argue that there is no evidence in the record that Plaintiff slipped. However, Plaintiff states in her deposition that she "slipped on something." (Mendez Depo., Doc. 129-3 at 153:14-20.)

Mr. Douglas caught Plaintiff before she hit the floor.



Plaintiff Being Caught by Mr. Douglas

(*Id.* at 8:00:19 PM to 8:00:21 PM.) In his deposition, Mr. Douglas explained that Plaintiff "rushed" towards him and that he touched her upper arms in order to "stabilize her." (Douglas Depo., Doc. 129-2 at ECF 23:3-18.)

In addition, Mr. Douglas testified that he was not in a position to see the floor before Plaintiff stumbled because he was concerned with moving the lane dividers and the activity occurring behind the customer service desk. (*Id.* at ECF 162:3-11; Douglas Declaration, Doc. 116-6 ¶ 8.) Plaintiff argues that Mr. Douglas could have seen the floor and the liquid thereon prior to Plaintiff's slip. (DSOF, Doc. 116-8 ¶¶ 24, 27; Pl. Resp. to DSOF, Doc. 123 ¶¶ 24, 27.) Less than a minute after Plaintiff slipped, Mr. Douglas cleaned the floor of the incident area.

(Plaintiff's Statement of Material Facts ("PSOF"), Doc. 122 ¶ 19; Def. Resp. to PSOF, Doc. 131 ¶ 19.)

After Plaintiff fell, she saw a liquid substance on the floor. (Mendez Depo., Doc. 129-3 at 155:3-6.) Although Plaintiff does not remember the color of the liquid, she recalls that it was not conspicuous. (*Id.* at 155:21-23, 159:12-16.)[9] In her deposition, she explained that had she looked down, she does not believe she would have seen the liquid. (*Id.* at 159:12-16.) She stated that it was possible that the liquid blended in with the floor. (*Id.* at 161:6-19.) Defendants' floor was white with dark spots, which resulted in a kind of speckled appearance. (*Id.* at 159:17-21.) When Plaintiff did observe the liquid, she only saw the streak where she slid; she did not see any drops or drips anywhere else. (*Id.* at 155:10-20.)[10] Mr. Douglas testified that he found a single brown puddle of liquid, rather than a trail of liquid. (Douglas Declaration, Doc. 116-6 ¶ 9.)[11]

---

[9] In a witness statement, Mr. Douglas stated that the liquid was brown. (Douglas Witness Statement, Doc. 120-2.)

[10]       Q: Was [the liquid] all in one place or was it spread out like drops or
           drips or a trail?
           A: I saw where I slipped. And it was fairly liquid, but I don't know how far and how
           large that was.
           Q: Okay. So other than the area where you slipped, did you see any liquid anywhere
           else?
           A: No.
           Q: Okay. So the only thing you saw on the floor was where you slipped?
           A: Yes.

[11] Plaintiff argues that Mr. Douglas found a separate puddle of liquid at roughly 8:23 PM that was in the path of Mr. Valdez's buggy and allegedly where Mr. Valdez had slipped. (DSOF, Doc. 116-8 ¶ 25; Pl. Resp. to DSOF, Doc. 123 ¶ 25.) However, Defendants' Assistant Manager, Mr. Luis Echeverria, testified that the separate "puddle" of liquid came from an ice machine in the area. (Echeverria Depo., Doc. 127-3 at ECF 20:22-21:21, 196:6-25.)

In her deposition, Plaintiff admitted that she did not see any trash, liquid, or debris on the floor prior to her incident. (DSOF, Doc. 116-8 ¶ 6; Pl. Resp. to DSOF, Doc. 123 ¶ 6.) More specifically, Plaintiff admitted that she did not see any liquid, puddles, drops, or drips on the floor. (Mendez Depo., Doc. 129-3 at 151:7-14.) Defendants' Customer Service Associate Mr. Douglas similarly testified that the liquid in which Plaintiff allegedly slipped was not in sight before the incident. (Douglas Depo., Doc. 129-2 at ECF 88:19-89:2.) Additionally, Plaintiff stated that the sales floor appeared to be well-maintained and clean before her incident and that there were no carts, boxes, employees, or any other objects obstructing her view when she entered the incident area. (DSOF, Doc. 116-8 ¶¶ 7, 9; Pl. Resp. to DSOF, Doc. 123 ¶¶ 7, 9.) When asked whether she "ever actually look[ed] at the floor to make sure it was safe" prior to the incident, Plaintiff answered, "No, because when you're walking, you're not looking at the floor constantly." (Mendez Depo., Doc. 129-3 at 153:6-9.)

Plaintiff acknowledged in her deposition that she did not see anyone putting the liquid on the floor, does not know how the spill came to be there, how long the spill had been there, or the source of the spill. (DSOF, Doc. 116-8 ¶ 17; Pl. Resp. to DSOF, Doc. 123 ¶ 17.) However, Plaintiff argues in her briefing that Defendants' employee, Mr. Valdez, caused the spill. Defendants suggest that an unknown customer in black clothing, who pushed a grocery cart with an "open soda" over the incident area at 7:56:20 PM, may have caused the spill. (DSOF, Doc. 116-8 ¶ 28; Def. MSJ Brief, Doc. 116-7 at 12.)

Defendants provided the Court with the following picture allegedly showing the open soda.



(Doc. 116-1 at 20.) However, it is unclear to the Court whether the unidentified customer holds a soda and whether the alleged soda is open. In any case, it appears that the customer does not walk directly over the incident area prior to the incident. (*Compare* Defendants' Video 8 Attached as Exhibit A to MSJ, Doc. 118 at 7:57:17 PM, *with* Defendants' Video 8 Attached as Exhibit A to MSJ, Doc. 118 at 8:00:18 PM.)

<u>Customer Allegedly Holding "Open Soda"</u>



<u>Plaintiff's Slip</u>



In addition to Mr. Douglas, Defendants' Customer Service Host Said Ahmed Foaud was working at the Store on the date of the incident. (DSOF, Doc. 116-8 ¶ 33; Pl. Resp. to DSOF, Doc. 123 ¶ 33.) Mr. Foaud testified that he does not remember seeing Plaintiff fall and does not recall looking towards her or the incident area before the incident occurred. (*Id.* ¶ 34.) Mr. Foaud also testified that

had he seen any spills or other hazards, he would have removed them. (Foaud Depo, Doc. 116-5 at ECF 6:25-7:5.) Plaintiff contends that Mr. Foaud "could have seen Mr. Valdez pushing the trash filled buggy through the store towards [him] at the customer service desk in violation of Wal-Mart safety policies and [] could have advised Mr. Valdez to use a proper solid trash bin to prevent leaks pursuant to Wal-Mart's trash collection policy." (DSOF, Doc. 116-8 ¶ 35; Pl. Resp. to DSOF, Doc. 123 ¶ 35.)[12]

## B. The Aftermath of the Incident

Two days after the incident, Defendants' Maintenance Associate Mr. Valdez was disciplined by a manager for "caus[ing] a customer accident by not making sure that he was using the company trash bin while taking out the trash instead of using a buggy." (Disciplinary Action, Doc. 120-5 at 3.) Defendants argue that the disciplinary action and the manager's findings are subsequent remedial measures on which the Plaintiff is unable to rely to prove negligence.

Four days after the incident, on September 19, 2018, Plaintiff's attorneys sent a spoliation letter to Defendants' Claims Department. (PSOF, Doc. 122 ¶ 25; Def. Resp. to PSOF, Doc. 131 ¶ 25.) In the letter, Plaintiff's attorneys advised Defendants' Claims Department that litigation was anticipated and requested the following documents and recordings from Defendants:

> 1. Security Video surveillance footage recordings, pictures, data of the store on the date of the accident;

---

[12] Another Wal-Mart employee, Markitta Ellison, can be seen in several videos working at the Store near the customer service desk on the date of the incident. (PSOF, Doc. 122 ¶ 12; Def. Resp. to PSOF, Doc. 131 ¶ 12.) However, Ms. Ellison was not deposed as a part of this litigation.

2.  Any store report of the incident;
3.  Log of the employees working on that date at the store;
4.  Photographs or video of the vehicles involved in this accident or the accident scene;
5.  Any e-mails, electronic messages, letters, memos, or other documents concerning this accident;
6.  Any manuals, guidelines rules or regulations given to employees responsible for the upkeep of the grounds;
7.  Any other material that is, or may be, relevant to this matter.

(Spoliation Letter, Doc. 121-21 at 2.)

Defendants preserved sixteen hours of video (two-hour clips from eight cameras) that had already been chosen and saved by Defendants' Asset Protection Associate Folake Olanrewaju on September 17, 2018 as part of the store's investigation. (*See* PSOF, Doc. 122 ¶ 27; Def. Resp. to PSOF, Doc. 131 ¶ 17; Olanrewaju Depo., Doc. 127-4 at ECF 80:1-12, 84:14-18.) Seven of the two-hour clips included footage starting one hour before the fall and ending one hour after the fall, i.e., from 7:00 PM to 9:00 PM. (*See* Defendants' Videos 1-3, 5-8 Attached as Exhibit A to MSJ, Doc. 118.) However, one of the two-hour clips contained video footage from 5:00 PM to 7:00 PM, a two-hour period prior to the fall. (*See* Defendants' Video 4 Attached as Exhibit A to MSJ, Doc. 118.)

Plaintiff argues that the video capturing the incorrect time frame came from the camera mounted closest to where Plaintiff fell (Camera 96) and that Defendants intentionally destroyed the video footage with the appropriate time frame because it showed that the buggy being pushed by Mr. Valdez was leaking just before the accident. (Pl. Resp. to Def. MSJ, Doc. 120 at 18-20.) Defendants argue that Camera 96 did not provide coverage of the incident area and that the

incorrect time frame was preserved due to an unintentional error. (Def. Resp. to PSOF, Doc. 131 ¶¶ 30, 32.)

### C.   This Litigation

On March 10, 2020, Plaintiff filed this negligence action against Defendants in the State Court of Gwinnett County, Georgia and requested attorneys' fees. (Compl., Doc. 1-2 at 2-6.) On August 18, 2020, Defendants removed this action to this Court. (Defendants' Notice of Removal, Doc. 1.) On November 5, 2021, Defendants moved for summary judgment on Plaintiff's negligence claim and her request for attorneys' fees.

## II.   Legal Standard

The Court may grant summary judgment only if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual issue is genuine if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual issue is material if resolving the factual issue might change the suit's outcome under the governing law. *Id.* The motion should be granted only if no rational factfinder could return a verdict in favor of the non-moving party. *Id.* at 249.

When ruling on the motion, the Court must view all evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in the non-moving party's favor. *See Reeves v. Sanderson Plumbing Prods., Inc.*,

530 U.S. 133, 150 (2000). The moving party need not positively disprove the opponent's case; rather, the moving party must establish the lack of evidentiary support for the non-moving party's position. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets this initial burden, in order to survive summary judgment, the non-moving party must then present competent evidence beyond the pleadings to show that there is a genuine issue for trial. *Id.* at 324-26. The essential question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

Finally, "[s]peculation does not create a *genuine* issue of fact; instead it creates a false issue, the demolition of which is a primary goal of summary judgment." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (quoting *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 931-32 (7th Cir. 1995) (emphasis in original)).

## III.   Discussion

Defendants argue that they are entitled to summary judgment on Plaintiff's negligence claim because Plaintiff cannot show that they had actual or constructive knowledge of the liquid hazard that caused Plaintiff's fall. Under Georgia law, to recover for injuries in a slip and fall action, "the plaintiff must plead and prove that: (1) the defendant had actual or constructive knowledge of the hazard; and (2) the plaintiff, despite exercising ordinary care for his or her own personal safety, lacked knowledge of the hazard due to the defendant's actions or to conditions

under the defendant's control." *Johnson v. All Am. Quality Foods, Inc.*, 798 S.E.2d 274, 276 (Ga. Ct. App. 2017).

The Georgia Supreme Court clarified in *American Multi-Cinema, Inc. v. Brown* that, to survive a motion for summary judgment,

> a plaintiff must come forward with evidence that, viewed in the most favorable light, would enable a rational trier of fact to find that the defendant had actual or constructive knowledge of the hazard. At that point, the burden of production shifts to the defendant to produce evidence that the plaintiff's injury was caused by his or her own voluntary negligence (intentional disregard of a known risk) or causal negligence (failure to exercise ordinary care for one's personal safety). If the defendant succeeds in doing so, the burden of production shifts back to the plaintiff to come forward with evidence that creates a genuine dispute of fact on the question of voluntary or causal negligence by the plaintiff or tends to show that any such negligence resulted from the defendant's own actions or conditions under the defendant's control.

679 S.E.2d 25, 28 (Ga. 2009).

In this case, Plaintiff argues that Defendants had either actual knowledge of the hazard due to Mr. Valdez's "active negligence" in creating the hazard by pushing a buggy containing bags of trash through the Store or constructive knowledge of the hazard.

### A.   Whether Defendants Had Actual Knowledge of the Hazard Due to Their Employee's Active Negligence

Under Georgia law, actual knowledge of a hazard may be imputed to the owner or operator of a premises in a case of active negligence. As explained by the Georgia Court of Appeals, "[a]cts or omissions of an owner/occupier of the premises can create a dangerous condition on the premises . . . . Where [such] acts or omissions of the owner/occupier work positive injury to others, such acts or

22

omissions are active negligence in the classic sense." *Johnson v. Kimberly Clark*, 504 S.E.2d 536, 539 (Ga. Ct. App. 1998).

> More specifically,
>
> Where the owner/occupier of the premises through malfeasance (commission of an act wrongful in itself), misfeasance (improper performance of an act), or nonfeasance (the failure to perform an act) creates a reasonably foreseeable danger to an invitee, then knowledge is presumed or imputed to the owner/occupier, because it is the tortfeasor's act or omission that created the danger or allowed the danger to continue unabated or without warning.

*Bruno's Food Stores, Inc. v. Taylor*, 491 S.E.2d 881, 887 (Ga. Ct. App. 1997) (physical precedent only).

However, where a defendant is alleged to have unintentionally caused a spill, causation is not determinative of liability and the defendant will not be held liable for active negligence on that basis. *Owens v. Wal-Mart Stores E., LP*, No. 1:18-CV-03979-WMR, 2020 WL 1800309, at *5 (N.D. Ga. Jan. 23, 2020) (explaining that a premises liability case is not transformed into an active negligence case simply because a defendant's employee unintentionally caused a spill). As explained by other courts in the Northern District of Georgia and Southern District of Georgia, "Georgia courts do not assign liability for substances *unintentionally* placed on the floor 'based on who caused the spill.'" *Kinzalow v. Ingles Mkts., Inc.*, No. 4:16-CV-0002-HLM, 2017 WL 5380755, at *8 (N.D. Ga. Apr. 14, 2017) (emphasis added) (quoting *Carlton v. Wal-Mart Stores, Inc.*, 234 F. Supp. 2d 1358, 1364 (S.D. Ga. 2002), *aff'd sub nom.*, *Carlton v. Wal-Mart Props., Inc.*, 85 F. App'x 726 (11th Cir. 2003)). That is because "[p]atrons and employees alike unwittingly knock over

things that cause a slippery result, and the focus is on the property owner's spillage detection/clean-up efforts, not the cause of the spill." *Id.*; *Owens*, 2020 WL 1800309, at *5.

Here, Plaintiff does not contend that Mr. Valdez purposely spilled liquid on the Store's floor, which distinguishes this case from those cited by Plaintiff. *See Kaplan v. Pulte Home Corp*, 537 S.E.2d 727, 731 (Ga. Ct. App. 2000) (finding that (1) a reasonable inference could be made that the defendant's employee or subcontractor pressure washed a driveway in freezing weather without sanding or salting it to prevent the formation of ice prior to plaintiff's fall; and (2) that defendant was therefore actively negligent and had imputed actual knowledge of the hazard); *Kimberly Clark*, 504 S.E.2d at 539 (finding that a factual issue existed regarding the active negligence and thus actual knowledge of defendant's employees about a pole hazard when there was a dispute regarding whether defendant's employees placed the unsecured safety poles where plaintiff was injured); *Clark v. Wal-Mart*, No. 7:07-CV-172, 2009 WL 10673998, at *3 (M.D. Ga. Mar. 30, 2009) (finding a fact issue about whether a store employee had actual knowledge of a hazard, i.e., a large puddle of water "at least a couple feet big," because "a jury could reasonably infer that the employees cleaning the floor [several minutes before plaintiff's fall] caused the puddle . . . [and] that [d]efendant failed to exercise ordinary care by creating such a large puddle near a check-out aisle"); *Bruno's Food Stores, Inc.*, 491 S.E.2d at 884 (noting that the substance at

issue was a liquid cleaning compound that was intentionally placed on the floor and was not a foreign substance).

Thus, Defendants are not necessarily liable for the spill, even if Mr. Valdez caused the spill.[13] To determine whether Defendants must be held liable for injuries Plaintiff sustained due to her slip and fall, the Court must "focus [instead] on the length of time that the hazard existed prior to the plaintiff's injury." *Carlton*, 234 F. Supp. 2d at 1364. The Court will consider this factor in its constructive knowledge analysis.

### 1.    Spoliation of Evidence

Before the Court moves to an analysis of Defendants' constructive knowledge, it first must address Plaintiff's argument that Defendants' failure to retain video footage for the correct time frame (i.e., from one hour prior to the incident to one hour after the incident) from the camera closest to the incident area

---

[13] Because causation is not determinative of Defendants' liability here, it is immaterial to this Court's analysis that Mr. Valdez was disciplined two days after Plaintiff's slip and fall for "caus[ing] a customer accident by not making sure that he was using the company trash bin while taking out the trash instead of using a buggy." (Disciplinary Action, Doc. 120-5 at 3.) Still, the Court finds it important to briefly address Defendants' argument that their manager's finding that Mr. Valdez caused the spill and Plaintiff's accident is an inadmissible remedial measure that cannot be used to find Defendants' liable for negligence.

Although the fact that Mr. Valdez was disciplined constitutes an inadmissible subsequent remedial measure, the finding by a Wal-Mart manager that Mr. Valdez caused the spill is not an inadmissible subsequent remedial measure. *See Prescott v. CSX Transp., Inc.*, No. CV512-013, 2013 WL 1192820, at *2 (S.D. Ga. Mar. 22, 2013) ("Post-accident reports and investigations can be distinguished from actual remedial measures, even if the report itself recommends such measures be taken. Post-accident investigations cannot inherently be characterized as 'measures' that would make an incident 'less likely to occur' as contemplated by the Rule. Fed. R. Evid. 407. This Court agrees that '[i]t would strain the spirit of the remedial measure prohibition in Rule 407 to extend its shield to evidence contained in post-event tests or reports.'") (internal citations omitted); *IVC US, Inc. v. Linden Bulk Transp. SW, LLC*, No. 4:15-CV-0120-HLM, 2017 WL 5203055, *9 (N.D. Ga. Apr. 4, 2017).

(Camera 96) should result in an adverse inference that Mr. Valdez in fact spilled the liquid on which Plaintiff slipped. Plaintiff requests that the Court impose sanctions against the Defendants for such alleged spoliation conduct and in particular, decline to grant Defendants' Motion for Summary Judgment on the basis of such spoliation.

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Graff v. Baja Marine Corp.*, 310 F. App'x 298, 301 (11th Cir. 2009). While federal law governs questions surrounding whether spoliation sanctions are warranted, the Eleventh Circuit has, in the past, borrowed a multi-factor test from Georgia spoliation law, finding that it was consistent with federal spoliation principles. *See Flury v. Daimler Chrysler Corp.*, 427 F.3d 939 (11th Cir. 2005). The factors identified by the Court in *Flury* include: (1) whether the party seeking sanctions was prejudiced as a result of the destruction of evidence and whether any prejudice could be cured; (2) the practical importance of the evidence; (3) whether the spoliating party acted in bad faith; and (4) the potential for abuse if sanctions are not imposed. *Id.* at 945.

However, since the Eleventh Circuit's decision in *Flury*, the Federal Rules of Civil Procedure have been amended to specifically address the spoliation of electronically stored information ("ESI"). Fed. R. Civ. P. 37(e); *see also, ML Healthcare Servs., LLC v. Publix Super Mkts., Inc.*, 881 F.3d 1293, 1307 (11th Cir. 2018). This December 2015 amendment to Fed. R. Civ. P. 37(e) provides:

26

**Failure to Preserve Electronically Stored Information.**

If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

    (1)    Upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or

    (2)    Only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

        (A)    Presume that the lost information was unfavorable to the party;

        (B)    Instruct the jury that it may or must presume the information was unfavorable to the party; or

        (C)    Dismiss the action or enter default judgment.

Fed. R. Civ. P. 37(e). The Advisory Committee Note to the 2015 Amendment further explains that the amendment "authorizes and specifies measures a court may employ if information that should have been preserved is lost, and specifies the findings necessary to justify these measures. It therefore forecloses reliance on inherent authority of state law to determine when certain measures should be used" to address spoliation of ESI. *See* Fed. R. Civ. P. 37(e), Advisory Committee Note to 2015 Amendment.[14]

_____

[14] The Note indicates that this amendment was necessary because:

> Federal circuits have established significantly different standards for imposing sanctions or curative measures on parties who fail to preserve electronically stored information. These developments have caused litigants to expend excessive effort and money on preservation in order to avoid the risk of severe sanctions if a court finds they did not do enough.

Fed. R. Civ. P. 37(e), Advisory Committee Note to 2015 Amendment.

The Eleventh Circuit has not determined whether the new Rule 37(e) has displaced the multi-factor *Flury* test when a party seeks sanctions based on the spoliation of ESI. *See ML Healthcare Servs., LLC*, 881 F.3d at 1308 (declining to determine whether the *Flury* factors were still applicable in light of amendment to Rule 37(e), as district court did not abuse discretion under either test).[15]

Here, Plaintiff argues that Defendants intentionally destroyed and failed to preserve video footage from Camera 96 allegedly showing Mr. Valdez pushing a buggy loaded with trash bags through the Store and spilling liquid at the relevant time frame. As a result, Plaintiff argues that the Court should find that there is a fact issue regarding whether Mr. Valdez caused the hazard and presume that the deleted video footage was unfavorable to Defendants.

Defendants dispute Plaintiff's factual characterization of events. Defendants' Asset Protection Associate Folake Olanrewaju, who was responsible for preserving the relevant footage, testified that, although Camera 96 was most proximate to the incident area, it did not provide coverage of the area. (Olanrewaju Depo., Doc. 127-4 at ECF 34:12-35:8; ECF 178:16-179:8; *see* Diagram Depicting the Stores' Cameras, Doc. 133.) Regarding the timing of the recording, Ms. Olanrewaju testified that, she does not know why Defendants' internal system preserved the wrong two-hour time period of footage because she intended to preserve the

---

[15] Some district courts in this circuit have determined that issues involving video evidence spoliation should be addressed under Rule 37(e) rather than the *Flury* test. *See, e.g.*, *Easterwood v. Carnival Corp.*, No., 19-cv-22932, 2020 WL 6781742, at *4 (S.D. Fla. Nov. 18, 2020); *Sosa v. Carnival Corp.*, No. 18-20957-CIV, 2018 WL 6335178, at *10 (S.D. Fla. Dec. 4, 2018); *Marshall v. Dentfirst, P.C.*, 313 F.R.D. 691, 695 (N.D. Ga. 2016).

correct time frame. (Olanrewaju Depo., Doc. 127-4 at ECF 41:12-25.) Plaintiff offers no evidence countering Mr. Olanrewaju's statements. Instead, Plaintiff speculates that Camera 96 would have shown the incident area and Mr. Valdez pushing a buggy that spilled liquid in the incident area.

In *ML Healthcare Servs.,* a store slip and fall case, the plaintiff argued that the defendant-store (Publix) should have preserved additional video evidence, as plaintiff had properly requested the preservation of footage from an additional camera and for weeks before and after the injury. *Id.* at 1307. Despite these requests, Publix only preserved one hour of video related to plaintiff's fall. *Id.* The district court denied the plaintiff's request for sanctions in the form of an adverse inference.

The Eleventh Circuit upheld the district court's denial of sanctions because Publix saved the most relevant portion of the video and did not have a duty to preserve any more than was provided. Further, the *ML Healthcare Servs.* Court explained that there was no evidence of bad faith since there was no evidence Publix destroyed any video in a manner inconsistent with normal video-retention policies, and because a failure to preserve speculative evidence (that is, the evidence that plaintiff *hoped* the video might show) does not raise the specter of bad faith in the same way intended destruction would. *Id.* at 1309.

Here, the Court similarly finds that an adverse inference sanction is not warranted against Defendants. Defendants preserved eight videos in connection with Plaintiff's incident, with only one video showing an incorrect time period.

Defendants also provided testimony from their video custodian that the video from Camera 96, which was produced with the incorrect time frame, would not have shown Plaintiff's fall or the incident area. Instead, Defendants' video custodian testified that Defendants produced video from the camera closest to the incident area that captured the incident and the surrounding area. Plaintiff has proffered only speculation, and no evidence, to the contrary. Further, Defendants' video custodian testified that she intended to preserve video footage from the correct time frame from Camera 96 and is unsure why the incorrect time frame was saved, particularly when she selected the time frame for all the videos to be produced in this litigation at one time.[16]

Although Defendants' internal procedures required that all video footage be retained for thirty (30) days, (PSOF, Doc. 122 ¶ 28; Def. Resp. to PSOF, Doc. 131 ¶ 28,) that one video was not properly preserved unintentionally is not enough under these circumstances to warrant sanctions or to prevent the granting of summary judgment in favor of Defendants if the Court finds that Defendants did not have constructive knowledge of the hazard.

---

[16]    Q: How can you preserve seven cameras for the 7:00 to 9 p.m. time
frame but for an eighth camera preserve it for the 5:00 to 7 p.m. time frame? How
does that happen.
A: I don't know. It was the wrong time.
Q: What was that?
A: I don't know. It was just a wrong time recorded. I don't know.
Q: When you burn the video footage to a DVD, do you have to go to each camera's
footage?
A: I put all cameras together and send it at once. I didn't do after it 1 after 2.
(*See* Olanrewaju Depo., Doc. 127-4 at ECF 80:6-17; *see also id.* at ECF 82:13-16 ("I set the eight
cameras at the same time. How this one came to this time I don't know. I set every camera that
I'm burning set at the same time. How it skipped two hours behind, I don't know."))

**B.     Whether Defendants Had Constructive Knowledge of the Hazard**

In addition to actual knowledge, Plaintiff argues that Defendants had constructive knowledge of the hazard. "To establish constructive knowledge, [a plaintiff] must show that (1) a store employee was in the immediate area of the hazard and could have easily seen [the hazard] or (2) the [hazard] remained long enough that ordinary diligence by the store employees should have discovered it." *Johnson*, 798 S.E.2d at 277 (quoting *Food Lion v. Walker*, 660 S.E.2d 426, 428 (Ga. Ct. App. 2008)).

Under the first method of proving constructive knowledge, Plaintiff must show more than the mere presence of Defendants' employees in the area; in addition, Plaintiff must show that there was a reasonable opportunity to discover and remove the hazard. *Kinzalow*, 2017 WL 5380755, at *6 (citing *Mitchell v. Food Giant, Inc.*, 337 S.E.2d 353, 356 (Ga. Ct. App. 1985)); *Mucyo v. Publix Super Mkts., Inc.*, 688 S.E.2d 372, 374 (Ga. Ct. App. 2009) ("Showing that an employee was merely working in the immediate area of a foreign substance is not enough; the employee must have been in a position to have easily seen the substance and removed it.").

Here, it is undisputed that Defendants' employees were in the incident area. However, it is disputed whether Defendants' employees could have easily seen and removed the hazard. The record evidence reveals that no one, including Plaintiff, saw the liquid substance on the floor. Indeed, Plaintiff testified that the liquid substance was not conspicuous and that had she looked down, she does not believe

she would have seen the liquid. (Mendez Depo., Doc. 129-3 at 159:12-16.) Because Plaintiff offers no specific evidence that Defendants' employees could have easily seen the liquid and admits that the liquid was difficult to see, Plaintiff has not established that Defendants' employees could have easily seen and removed the hazard and therefore has not established that Defendants had constructive knowledge of the hazard. *Compare Chastain v. CF Ga. N. DeKalb*, 569 S.E.2d 914, 916-17 (Ga. Ct. App. 2002) (affirming summary judgment because customer-plaintiff and her husband admitted that the hazard, a hazard, i.e a "small area of dribbled water," was difficult to detect), *with Dix v. Kroger Co.*, 570 S.E.2d 89, 91 (Ga. Ct. App. 2002) (reversing summary judgment because an issue of fact existed as to whether a store employee who was "proximate" to a customer's fall site possessed constructive knowledge of a hazard, i.e., a muscadine, because the employee admitted that she could have seen the hazard).

Further, per Plaintiff's argument, Mr. Valdez's buggy caused the spill that resulted in Plaintiff's fall. Between Mr. Valdez's leaving the incident area with his buggy and Plaintiff falling, less than one minute elapsed. Thus, there was little to no time for Defendants' employees to discover and remove the hazard, further bolstering this Court's conclusion that Plaintiff has not established any credible evidence upon which a jury could rely that Defendants' employees could have easily seen and removed the hazard. *See Keisha v. Dundon*, 809 S.E.2d 835, 836-37 (Ga. Ct. App. 2018) (reversing denial of summary judgment because store employee had no knowledge of a hazard, i.e., a "fairly big puddle [of gasoline]

occupying three-to-four feet," because the hazard was "on the ground for twenty seconds, at most, and only five or ten seconds by [customer-plaintiff's] own estimation, when he fell"); *Hardee's Food Sys. v. Green*, 502 S.E.2d 738 (Ga. Ct. App. 1998) (upholding summary judgment where the plaintiff admitted that the hazard was not readily visible, and no evidence suggested that the hazard was on the floor for any length of time).

The Court's analysis could stop here because when "there is no evidence that the [hazard] could have been discovered during a reasonable inspection, then no inference arises that defendants' failure to discover the defect was the result of any alleged failure to inspect." *Chastain*, 569 S.E.2d at 916. Here, Plaintiff admits that the spill was so difficult to see that even she might not have noticed it had she looked down, and that fact is sufficient to negate any inference that Defendants' failure to discover the defect was the result of any alleged failure to inspect. Nevertheless, in an abundance of caution, the Court will still consider the second method of showing constructive knowledge.

"[U]nder the second method of showing constructive knowledge, plaintiffs must produce evidence from which the jury may infer that a reasonable inspection procedure was not in place or was not followed and the length of time the substance had been on the floor." *Kroger Co. v. Schoenhoff*, 751 S.E.2d 438, 440 (Ga. Ct. App. 2013). Georgia courts have emphasized that what constitutes a reasonable inspection procedure is context-dependent:

> The length of time the substance must remain on the floor before the owner should have discovered it and what constitutes a reasonable inspection procedure vary with each case, depending on the nature of the business, the size of the store, the number of customers, the nature of the dangerous condition, and the store's location.

*Shepard v. Winn Dixie Stores, Inc.*, 527 S.E.2d 36, 39 (Ga. Ct. App. 1999).

Generally, however, courts have determined that an inspection that occurred less than twenty minutes before a fall is reasonable as a matter of law. *See, e.g.*, *Wallace v. Wal-Mart Stores, Inc.*, 612 S.E.2d 528, 531 (Ga. Ct. App. 2005) (affirming grant of summary judgment based on evidence that inspection was conducted fifteen to twenty minutes before fall); *Deloach v. Food Lion, Inc.*, 491 S.E.2d 845, 847 (Ga. Ct. App. 1997) (explaining that Food Lion established that it used reasonable care in inspecting the premises where employee's affidavit stated that employee inspected the floor within ten minutes of plaintiff's fall); *Bolton v. Wal Mart Stores, Inc.*, 570 S.E.2d 643, 645 (Ga. Ct. App. 2002) (affirming grant of summary judgment where defendant's evidence showed that employee was in exact area ten to fifteen minutes before fall and floor was clear of any substance).

Here, Defendants' Customer Service Associate Davanta Douglas testified that he conducted two inspections of the incident area prior to Plaintiff's fall, one within eight to nine minutes of Plaintiff's fall and the other within approximately one minute of Plaintiff's fall. Plaintiff argues, very briefly and without pointing to any specific evidence, that the inspections were not reasonable and notes that Defendants have not proffered contemporaneous documentation of any inspections prior to her fall. But Plaintiff provides no authority to support that a

defendant must provide contemporaneous documentation of an inspection to prevail at summary judgment. Indeed, the applicable legal authority shows that a defendant can show that it conducted a reasonable inspection based only on testimony of the employee who conducted the inspection. *See Mucyo*, 688 S.E.2d at 375 (finding that Publix established reasonable inspection where uncontradicted testimony of employee demonstrated that she inspected area minutes before the fall); *Medders v. Kroger Co.*, 572 S.E.2d 386, 388 (Ga. Ct. App. 2002) (concluding that Kroger established reasonable inspection based on testimony that manager walked down aisle five to ten minutes earlier and did not see the liquid hazard); *McCullough v. Michaels Stores, Inc.*, 1:12-cv-4079-RWS, 2014 WL 4925664, at *3 (N.D. Ga. Sept. 30, 2014) (explaining that employee's affidavit, which stated that he inspected hallway ten minutes before Plaintiff's accident, established that inspection adequate as a matter of law).

Additionally, the Court finds that Mr. Douglas' testimony provides details of Defendants' general inspection policy, as he deposed that he looked for potential hazards, including foreign liquids, on the day that Plaintiff slipped, consistent with Defendants' policies. *See Wallace*, 612 S.E.2d at 531 (granting summary judgment where evidence showed that inspection procedure required employees to inspect and clean their area "continuously," checking for any kind of obstructions).

Moreover, as Defendants argue, "[r]egardless of the adequacy of any inspection program, when an owner shows that an inspection occurred within a brief period of time prior to an invitee's fall, the inspection procedure was adequate

as a matter of law and defeats an invitee's negligence action." *Mucyo,* 688 S.E.2d at 375 (citing *Medders*, 572 S.E.2d at 388); *McCullough*, 2014 WL 4925664, at *3 (finding that "the fact that an inspection revealed no hazard in the hallway ten minutes before Plaintiff's accident renders that inspection adequate as a matter of law"); *Matthews v. Varsity, Inc.*, 546 S.E.2d 878 (Ga. Ct. App. 2001) (affirming grant of summary judgment where The Varsity presented evidence that area where plaintiff fell was inspected and free of debris five minutes before fall, and thus plaintiff's "enumeration attacking The Varsity's inspection procedures lacks merit"); *Brown v. Publix Super Mkts., Inc.*, 626 F. App'x 793, 797 (11th Cir. 2015) (finding that Publix's inspection of area fifteen minutes before incident was adequate as a matter of law). Accordingly, this Court holds that Mr. Douglas's inspections at 7:52:04 PM and 7:59:14 PM, approximately eight to nine minutes and one minute before Plaintiff's fall respectively, were adequate as a matter of law and that Defendants did not have constructive knowledge of the hazard.

Because Plaintiff has not established actual or constructive knowledge on the part of Defendants, Defendants' Motion for Summary Judgment [Doc. 116] is **GRANTED**.

## IV.   Conclusion

Defendants' Motion for Summary Judgment [Doc. 116] is **GRANTED**, and the Parties' Requests for Oral Argument on the same [Docs. 117, 124] are **DENIED as moot**. Because the Court has granted Defendants' Motion for Summary Judgment, Plaintiff's Motion for Leave to File an Amended Complaint [Doc. 135]

to clarify her request for attorneys' fees is **DENIED as moot**, and Plaintiff's Request for Oral Argument on her Motion for Leave to File an Amended Complaint [140] is similarly **DENIED as moot**.

The Court **ENTERS** judgment in favor of Defendants and against Plaintiff. The Clerk is **DIRECTED** to close this case.

**IT IS SO ORDERED** this 26th day of September, 2022.

**Honorable Amy Totenberg**
**United States District Judge**